Filed 4/10/26  P. v. Mancilla CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>JONATHAN MANCILLA,<br><br>     Defendant and Appellant. | A173911<br><br>(City & County of San Francisco Super. Ct. Nos. 23009526, 24022969) |

During the pendency of two criminal cases involving appellant Jonathan Mancilla, the trial court found him incompetent to stand trial and committed him to the State Department of State Hospitals (DSH) under Penal Code[1] section 1370.  An administrative law judge (ALJ) issued an involuntary medication order (IMO) for 21 days to compel administration of antipsychotic medication to Mancilla, which has since expired.  The trial court then held a separate hearing and issued a one-year IMO through August 2026.

Mancilla asserts the trial court denied him a proper *Marsden* hearing (*People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*)) prior to his commitment. He also challenges both the 21-day IMO and the one-year IMO, and raises

_____

[1] All further statutory references are to the Penal Code.

1

claims of ineffective assistance of counsel.  We dismiss Mancilla's challenge to the 21-day IMO as moot and otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Underlying Criminal Proceedings*

In September 2024, Mancilla pled guilty in case No. 23009526 to possession of a handgun by a felon (§ 29800, subd. (a)(1)).  In December 2024, substitute conflict counsel Ean Vizzi was appointed to represent Mancilla in this case ahead of an anticipated sentencing hearing.

Unless otherwise noted, all further dates refer to 2025.

In January, Mancilla was charged by information in case No. 24022969 with making criminal threats (§ 422, subd. (a)) and assault with a deadly weapon (§ 245, subd. (a)(1)).  Vizzi was also appointed to represent Mancilla in that case.

In February, Mancilla filed a *Marsden* motion to remove Vizzi as counsel.  The trial court held a *Marsden* hearing and denied the motion.

*Mental Competency Ruling*

In March, Vizzi expressed doubt as to Mancilla's competency and proceedings were immediately suspended in both cases.  The trial court ordered a psychologist to evaluate Mancilla's competency to stand trial.  In an April report, the psychologist opined Mancilla was not competent to proceed to trial.

In May, the trial court found Mancilla was not competent to stand trial. On May 29, the court ordered Mancilla committed to DSH for up to two years, but did not enter a medication order.

*IMO Proceedings*

Mancilla was admitted to DSH on June 17.

On June 29, DSH petitioned the Office of Administrative Hearings for authorization to involuntarily administer antipsychotic medication to Mancilla pursuant to section 1370, subdivision (a)(2)(C), based on the certification of Dr. Sarah Polfliet.

Polfliet diagnosed Mancilla with "[u]nspecified schizophrenia spectrum and other psychotic disorder" and opined antipsychotic medication was the medically necessary and appropriate treatment for Mancilla's diagnosis. She stated Mancilla lacked capacity to make decisions as to the medication, it was probable that serious harm to his physical or mental health would result from a lack of medication, and Mancilla was a danger to others. In reaching that conclusion, Polfliet considered instances in which Mancilla expressed hearing voices, had delusions that nurses and others were persecuting him, and exhibited violent behavior after being admitted to DSH. In one such instance, on June 25, Mancilla was placed in restraints after he shouted at and argued with hospital staff, threatened to assault them, punched a window and kicked a door at the nurse's station, and attempted to hit staff.

On July 2, an ALJ held a hearing on the temporary IMO petition, at which Mancilla appeared and was represented by counsel Michele Shaddow. Vizzi was not present and the record does not reveal how Shaddow came to represent Mancilla at the July 2 hearing. After taking testimony, the ALJ issued a 21-day IMO, from June 29 to July 20. The parties stipulated to continue the ALJ's IMO through August 3.

On August 1, after holding a hearing at which Mancilla was represented by Vizzi, the court issued a one-year IMO. The court found Mancilla lacked the capacity to make decisions regarding antipsychotic medication and that serious harm to his physical or mental health was probable without treatment.

3

Mancilla appealed the ALJ's 21-day IMO while it was still in effect; this court later deemed the notice of appeal to include the court's one-year IMO.

<strong>DISCUSSION</strong>

Mancilla challenges the *Marsden* hearing, the 21-day IMO, and the one-year IMO. In the alternative, he argues Vizzi rendered ineffective assistance.

## I. The *Marsden* Inquiry Was Adequate

Mancilla avers he was denied a proper *Marsden* hearing as the court failed to make an adequate inquiry.

"When a defendant seeks new counsel on the basis that his appointed counsel is providing inadequate representation[,] . . . the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance. A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." (*People v. Smith* (2003) 30 Cal.4th 581, 604.) If the trial court provides a defendant a " 'full opportunity to air all of his complaints, and counsel to respond to them,' " no more is required. (*People v. Wright* (2021) 12 Cal.5th 419, 441 (*Wright*).)

We review the court's decision not to discharge appointed counsel for abuse of discretion (*Wright, supra*, 12 Cal.5th at p. 440) and conclude there was none.

### A. Additional Background

On February 21, Mancilla asked the trial court to replace Vizzi as counsel, and the court held a *Marsden* hearing. The court asked Mancilla

4

what he thought Vizzi was failing to do that Mancilla believed he should be doing as counsel, and Mancilla responded as follows.

Mancilla claimed Vizzi was being paid by a third party to represent him and make him look guilty when "there was no case"; Vizzi was "manipulating the system" and there was a "pedophile undercover that works in the system"; Vizzi "slapped [Mancilla] in the face telling [him he] had no court date"; Vizzi was going to represent him "no matter what"; Vizzi told Mancilla he had no choice but to have Vizzi represent him because Mancilla fired a previous lawyer; Mancilla "fired" Vizzi four times before the *Marsden* hearing; Vizzi went to Mancilla's door the day prior and asked if Mancilla wanted to talk; Mancilla did not like how Vizzi represented him; Vizzi was going to cause him to stay in custody longer, apparently by asking Mancilla to have a mental health evaluation, which was "inconsiderate"; Vizzi did not give Mancilla paperwork showing his official diagnosis; and Mancilla was unable to obtain video evidence of the underlying criminal conduct despite trying to do so. Vizzi declined the court's invitation to respond.

The court denied the motion, stating: "[T]o the extent there are any conflicts, I'm not sure there is, I don't find there is anything that Mr. Vizzi has not done or should be doing differently. I find that he has properly been representing you and will continue to do so. He's a very experienced attorney. [¶] . . . [¶] He is protecting [your rights]."

## B. Analysis

Mancilla asserts the *Marsden* hearing was insufficient as the trial court failed to conduct a "probing inquiry" about any disagreements he and Vizzi had over Vizzi's actions as counsel. We are not persuaded.

The record reflects the trial court heard Mancilla's numerous complaints about Vizzi's representation on the case, as well as various other

5

issues Mancilla sought to raise regarding the proceedings. Thus, contrary to Mancilla's assertion, the court plainly provided him a sufficient opportunity to explain his concerns with Vizzi. Further, the court provided Vizzi a chance to respond, which Vizzi declined. On this record, Mancilla fails to establish the court's inquiry was inadequate. (*Wright*, *supra*, 12 Cal.5th at p. 441.)

Additionally, Mancilla does not show the trial court otherwise abused its discretion in denying the *Marsden* motion as he fails to argue—let alone establish—actual conflict, deficient performance by Vizzi, and prejudice on any of the grounds on which he sought to remove Vizzi. (See *People v. Ng* (2022) 13 Cal.5th 448, 530.) Thus, the *Marsden* hearing was not improper.

## II. The Challenges to the IMOs Are Unavailing

Mancilla seeks to challenge both the 21-day IMO that expired in August 2025, as well as the one-year IMO that remains in effect until August 1, 2026. As we explain, the former challenge is moot and the latter is without merit.

### A. Legal Framework

" 'A court may not try a criminal defendant who is mentally incompetent. [Citation.] . . . If a defendant is found [incompetent to stand trial] by the court, . . . section 1370 provides that criminal proceedings "shall be suspended until the person becomes mentally competent." [Citation.] In order to "promote the defendant's speedy restoration to mental competence," the court shall commit the defendant to a DSH facility for treatment.' " (*D.K. v. Office of Administrative Hearings* (2024) 101 Cal.App.5th 1206, 1214 (*D.K.*).) As part of that effort to restore a defendant to mental competence,

6

the state may involuntarily administer antipsychotic drugs to the defendant. (*Sell v. United States* (2003) 539 U.S. 166, 179.)

Nonetheless, "an individual has a 'significant' constitutionally protected 'liberty interest' in 'avoiding the unwanted administration of antipsychotic drugs.'" (*Sell v. United States, supra*, 539 U.S. at p. 178.) Thus, as part of a DSH commitment, a court may issue an IMO where, as relevant for our purposes: (1) the defendant lacks capacity to make decisions regarding antipsychotic medication; (2) his or her mental disorder requires medical treatment with antipsychotic medication; and (3) without such treatment, it is probable that serious harm to the defendant's physical or mental health will result. (§ 1370, subd. (a)(2)(B)(i)(I).)

When, as here, the trial court does not issue an IMO at the time that it orders a defendant committed to DSH, and it is subsequently determined "that antipsychotic medication has become medically necessary and appropriate" (§ 1370, subd. (a)(2)(C)), section 1370 provides for the following procedure for seeking an IMO (in the absence of the defendant's informed consent).

If the defendant's treating psychiatrist believes the defendant meets the three factors described above, the psychiatrist must submit a certification to that effect containing an assessment of the defendant's current mental status and the psychiatrist's opinion that the medication is medically necessary and appropriate. (§ 1370, subd. (a)(2)(C).) Once that certification has been made, antipsychotic medication may be administered for up to 21 days—however, within 72 hours of the certification, a medication review hearing must be held before an ALJ. (§ 1370, subd. (a)(2)(D)(i).) If the ALJ determines the defendant meets the criteria for an IMO, administration of the medication may continue for the rest of the 21-day certification period.

7

(§ 1370, subd. (a)(2)(D)(ii).)  If the ALJ does not find the criteria for an IMO are met, the administration must be discontinued until a superior court determines otherwise.  (§ 1370, subd. (a)(2)(D)(iii).)

The superior court must hold a hearing to determine whether to administer medication beyond the 21-day certification period.  (§ 1370, subd. (a)(2)(D)(iv).)  That hearing must generally take place within 18 days of the certification date, but it may be continued for up to 14 additional days if the parties so stipulate, as occurred here.  (§ 1370, subd. (a)(2)(D)(iv), (vii).)  Following the hearing, the superior court may, upon making the necessary findings, issue an IMO for up to one year, which is subject to renewal. (§ 1370, subds. (a)(2)(D)(v), (viii) & (a)(7).)

With this legal framework in mind, we turn to Mancilla's challenges to the IMOs.

**B.  The Challenge to the Expired 21-day IMO Is Moot**

Mancilla asserts Polfliet's certification was flawed and that he was denied appropriate legal representation at the July 2 hearing because he was represented by Shaddow instead of Vizzi.  We conclude Mancilla's challenge to the expired 21-day IMO is moot.

A defendant may seek interim judicial review of a temporary (i.e., 21-day) IMO.  (*D.K.*, *supra*, 101 Cal.App.5th at p. 1214; see § 1370, subd. (a)(2)(D)(i).)  Noting section 1370 expressly states a defendant may seek judicial review of a temporary IMO, *D.K.* concluded a defendant is entitled to seek review via writ petition filed in the superior court while the temporary IMO is in effect.  (*D.K.*, at pp. 1214, 1216–1218.)

Contrary to the Attorney General's assertion, we assume (without deciding) for purposes of this appeal that Mancilla's in propria persona notice of appeal of the 21-day IMO, dated July 15, while the temporary IMO was

8

still in effect, was a procedurally proper method of seeking review of that order.  (See *D.K.*, *supra*, 101 Cal.App.5th at p. 1217 ["generalized 'judicial review' language in section 1370 presumably encompasses" various forms of judicial review, including "a petition for administrative mandamus, a writ of habeas corpus, [and] an appeal . . . depending on the circumstances from which a defendant seeks such review"].)

Nonetheless, even if procedurally proper and at one time justiciable, Mancilla's appeal of the 21-day IMO order is now moot as any ruling " ' "can have no practical effect [nor] . . . provide the parties with effective relief." ' " (*D.K.*, *supra*, 101 Cal.App.5th at p. 1213 [an action originally based on a justiciable controversy cannot be maintained on appeal if the issue has become moot by subsequent acts or events].)

We are guided by our duty to decide actual controversies and not to opine upon moot questions or abstract propositions, or to declare principles or rules of law that cannot affect the matter at issue in the case before us. (*People v. McCray* (2023) 98 Cal.App.5th 260, 267.)  The temporary IMO in this case ceased being in effect in early August 2025, over eight months ago, and was replaced by a one-year IMO that remains in effect (and which we address in section II.C., *post*)—events that have rendered issues regarding the temporary IMO moot.  (See *D.K.*, *supra*, 101 Cal.App.5th at p. 1213.)

Mancilla nonetheless asserts the alleged flaws in the July 2 proceeding before the ALJ warrant the exercise of our discretion to review their merits because, he maintains, they represent issues of public importance that are capable of repetition yet evade review.  (*People v. McCray*, *supra*, 98 Cal.App.5th at p. 267.)  However, "[f]or the evading review exception [to mootness] to apply, there must be more at stake than simple error-correction in an individual case.  The exception implicates the fundamental role of an

9

appellate court as a custodian of the law, which is why courts often say it applies to issues that touch upon the 'public interest.' " (*Id.* at pp. 267–268.)

The issues Mancilla seeks to raise regarding Polfliet's certification and his representation by Shaddow instead of Vizzi concern error-correction rather than issues of public interest warranting our review despite their mootness.

Specifically, Mancilla contends Polfliet's certification failed to establish she was his treating psychiatrist, obscured the extent of her interview with Mancilla, omitted any discussion of medicines and possible side effects, and did not properly explain the basis for any conclusion that he lacked the capacity to consent to antipsychotic medication. All these claims are grounded in case-specific assessments of Mancilla's "then-current mental state" at the time of the certification that are not likely to recur in the same manner at future proceedings, which would "presumably be based on updated medical reports and testimony." (*D.K.*, *supra*, 101 Cal.App.5th at p. 1213.) Therefore, we decline to exercise our discretion to decide this issue. (*Ibid.*)

Additionally, Mancilla argues he was denied appropriate legal representation at the July 2 hearing because he was represented by Shaddow, a "Los Angeles-based, non-public defender," rather than Vizzi. The relevant statute provides a defendant "shall be represented by an attorney or a patients' rights advocate" at the hearing. (§ 1370, subd. (a)(2)(D)(i).) Again, the question of whether Mancilla was denied appropriate representation is specific to the circumstances of his case. Those circumstances include Mancilla's inconsistent assertions that it was error to deny his *Marsden* motion to replace Vizzi, which was in part based on Vizzi's alleged incompetence, and yet it was also error to appoint substitute counsel in place of Vizzi at the medication review hearing. In any event, we note Mancilla

10

points to no authority supporting the conclusion that appointment of new counsel at the July 2 hearing violated his rights and the record does not reflect any such violation.

Finally, we reject Mancilla's suggestion that any alleged errors in the July 2 hearing "poisoned" the subsequent one-year IMO hearing before the superior court as, in that hearing, "the superior court is *not* reviewing the adequacy of the temporary medication order, but rather conducting a separate proceeding to assess whether an additional one-year involuntary medication order is appropriate." (*D.K.*, *supra*, 101 Cal.App.5th at p. 1216.)

In sum, Mancilla's challenge to the 21-day IMO is moot and no exception to the mootness doctrine applies. We shall dismiss the appeal to the extent it seeks to challenge that IMO.[2]

### C. The One-year IMO Is Supported by Substantial Evidence

Mancilla further argues the one-year IMO is unsupported by sufficient evidence.

We review the court's issuance of an IMO for substantial evidence. (*People v. Lameed* (2016) 247 Cal.App.4th 381, 397.) Under that standard, we review the "entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find" Mancilla required medication. (See *People v. Maciel* (2013) 57 Cal.4th 482, 514–515.) We conclude the record contains such evidence.

---

[2] In conjunction with this appeal, Mancilla filed a petition for writ of habeas corpus (*In re Mancilla*, A174816) also seeking to challenge the 21-day IMO. We have denied the petition by separate order filed this date.

11

### 1. Additional Background

At the August 1 hearing underlying the superior court's issuance of the one-year IMO, the following took place.

Dr. Robert Loman, an inpatient psychiatrist at Napa State Hospital who was Mancilla's treating psychiatrist, was qualified as an expert in psychiatry and provided the sole witness testimony. Loman had been treating Mancilla for about one month and had evaluated him six or seven times in person. To prepare for his testimony, he reviewed records written by himself and other physicians, admitting records, jail records, and forensic reports.

Loman agreed with Mancilla's admitting diagnosis of "unspecified schizophrenia and other psychotic disorder," which was called unspecified because the criteria for a full diagnosis of schizophrenia required persistent symptoms for more than six months. As he had only been treating Mancilla for about a month, Loman could not yet make a full diagnosis of schizophrenia, as opposed to unspecified schizophrenia and other psychotic disorder.

Loman described how Mancilla's symptoms had progressed over time. At their first encounter, it was evident that Mancilla had a psychotic disorder and was very paranoid, believing others were conspiring against him and stealing his identity and that the judges and lawyers were all related. Mancilla was upset, agitated, and very resistant to taking medications. He did not believe he needed medication or that he had any sort of mental illness, and he did not have insight into his treatment needs, specifically needing medication for the rest of his life. Loman's effort to have a conversation with Mancilla about the need for medication and the related

12

risks and benefits ended abruptly when Mancilla became paranoid, upset, and verbally aggressive.

Mancilla did not present differently over the next three to five visits. However, there were improvements in Mancilla's symptoms at a visit about one week before the hearing: "He was able to articulate himself in a way that wasn't hostile. He wasn't as paranoid. He didn't believe that the judges, lawyers, and myself were all relatives conspiring against him and stealing his identity; and he was much more cooperative in interview."

Loman testified that, since Mancilla had started taking medication—which only began once he was required to do so by the 21-day IMO—Mancilla had been able to engage with him in a meaningful way and had not had any paranoid delusions. Loman opined the medications were "surely effective" and resulted in a "remarkable change." Having considered the benefits, risks, and alternative options, Loman believed Mancilla's diagnosis required antipsychotic medication to be adequately treated. He concluded no alternative would be as effective as medication; for example, Mancilla would not be able to engage in or have the ability to understand therapy.

Loman opined Mancilla did not have the capacity to make decisions on his own regarding antipsychotic medication due to his lack of awareness or engagement with his treatment team to have insight into his mental illness. Based on Mancilla's history of refusing to take medication as well as Loman's most recent interaction with him, Loman believed Mancilla likely would not continue to take medications unless he was forced to do so. Specifically, Mancilla told Loman earlier that day that he knew he needed to take medication at that time but did not know for how long or whether the medication was necessary.

13

Loman further believed Mancilla would be at an increased risk for harming himself and/or others if he were not taking medication. Loman based this on Mancilla's aggressive, hostile, and violent presentation without taking medication, which was typical for a person in a psychotic state, compared with how Mancilla acted while on medication, specifically not needing to be in restraints and not having any assaultive incidents. Loman opined that, without medication, Mancilla would revert to a psychotic state, be paranoid and unable to relate to others, have an increased risk for social and interpersonal isolation, and be at risk for harming himself by getting into fights and not adequately taking care of himself.

The superior court issued the one-year IMO after finding Mancilla lacked capacity to make decisions regarding antipsychotic medication and, if his mental condition were not treated, serious harm to his physical or mental health was probable.

### 2. Analysis

As relevant to this case, to properly issue a one-year IMO, the court was required to "hear and determine whether" Mancilla (1) lacked capacity to make decisions regarding antipsychotic medication, (2) his mental conditions required medical treatment with antipsychotic medication, and (3) serious harm to his physical or mental health was probable without that treatment. (§ 1370, subd. (a)(2)(B)(i)(I).) If a court finds these conditions to be true, the court " 'shall issue' " an IMO for a period of no more than one year. (*People v. Lewis* (2025) 111 Cal.App.5th 1078, 1091.)

Mancilla contends the one-year IMO is not supported by substantial evidence because, at the time of the August 1 hearing, he was medication-compliant, had improvements in his condition and aggressiveness, and there

14

was no evidence he "was *presently* refusing to take medications or decompensating in any way." We are not convinced.

Loman's testimony provided substantial evidence for the court's findings in support of the IMO. First, Loman testified that, based on Mancilla's lack of awareness and engagement with his treatment team, his prior refusal to take medication, and his own statements earlier on the day of the hearing that he did not know whether medication was necessary, Mancilla lacked the capacity to make decisions regarding antipsychotic medication on his own. This was substantial evidence as to the first factor. (§ 1370, subd. (a)(2)(B)(i)(I).)

Second, there was substantial evidence that Mancilla's diagnosis of unspecified schizophrenia and other psychotic disorder required treatment with antipsychotic medication. (§ 1370, subd. (a)(2)(B)(i)(I).) Loman testified that such medication was the most effective treatment for Mancilla's condition, and other potential treatments such as therapy were unlikely to be as effective given Mancilla's symptoms without medication. Loman noted the results of such treatment were not just hypothetical but rather already demonstrated since Mancilla was required to start taking antipsychotic medication by the 21-day IMO.

Third, the record contains substantial evidence that, without antipsychotic medication, serious harm to Mancilla's physical or mental health was probable. (§ 1370, subd. (a)(2)(B)(i)(I).) Loman testified that, prior to taking antipsychotic medication, Mancilla was aggressive, hostile, and violent. Indeed, the record reflects Mancilla had to be restrained on at least one occasion, during the June 25 incident in which he punched and kicked the nurse's station and threatened to assault, and attempted to hit, staff members. However, Loman stated that, while taking the medication,

15

Mancilla no longer needed to be in restraints, was able to meaningfully engage, and did not exhibit assaultive behavior. Loman believed Mancilla would regress to a psychotic state without the medication, which would cause social, interpersonal, and physical harm to Mancilla. This provided substantial evidence of a probability of serious harm.

Therefore, the record contains reasonable, credible evidence supporting the one-year IMO. In addition, contrary to Mancilla's assertion that "the handwriting was already on the wall" based on the 21-day IMO, the superior court made its findings after hearing the testimony of Loman, who was not involved in the prior hearing. Further, as we have already explained, the one-year IMO hearing is a separate proceeding from the 21-day medication review hearing (*D.K.*, *supra*, 101 Cal.App.5th at p. 1216), and there is no indication that the prior hearing or temporary IMO improperly affected the superior court's decision to issue the one-year IMO. Accordingly, we shall affirm the one-year IMO.

## IV. Claim of Ineffective Assistance of Counsel Is Unavailing

Mancilla alternatively argues in his opening brief that he was "overall" afforded inadequate representation by counsel and there is a reasonable probability of a more favorable result regarding the IMOs had Vizzi "stepped more aggressively to the plate."

To prevail on a claim of ineffective assistance, a defendant must demonstrate both that "counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms," as well as resulting prejudice. (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) Reversal for ineffective assistance of counsel is warranted "only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and

failed to provide one, or (3) there simply could be no satisfactory explanation." (*Ibid.*) Mancilla fails to make such a showing.

Mancilla appears to fault Vizzi for failing to diligently advocate on his behalf regarding whether he lacked the capacity to consent to treatment, including by more thoroughly cross-examining Loman or presenting a defense expert at the August 1 hearing. However, the record does not affirmatively show Vizzi had no rational tactical purpose for his actions, that he failed to provide a reason for doing so after being asked, or that there is no satisfactory explanation for Vizzi's decision-making at the hearing. Mancilla's claim of ineffective assistance of counsel is therefore unavailing.

## DISPOSITION

The appeal is dismissed insofar as it seeks to challenge the 21-day IMO. The court's denial of the *Marsden* motion and its issuance of the one-year IMO are affirmed.

17

PETROU, J.

WE CONCUR:

TUCHER, P. J.

FUJISAKI, J.

A173911 / *People v. Mancilla*